United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT A. NITSCH, et al.,<br><br>              Plaintiffs,<br><br>      v.<br><br>DREAMWORKS ANIMATION SKG INC., et al.,<br><br>              Defendants. | Case No. 14-CV-04062-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES**<br><br>Re: Dkt. No. 385 |

Before the Court is Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards arising out of a settlement between individual and representative plaintiffs Robert Nitsch, David Wentworth, and Georgia Cano, and the Class they represent (collectively, "Plaintiffs"), and DreamWorks Animation SKG, Inc. ("DreamWorks"), and The Walt Disney Company, Pixar, Lucasfilm, Ltd., LLC, and Two Pic MC LLC (collectively, "Disney").

Having considered the submissions of the parties, the arguments made at the May 18, 2017 hearing, the relevant law, and the record in this case, the Court hereby GRANTS IN PART AND DENIES IN PART Plaintiffs' motion.

I.      **BACKGROUND**

This is a consolidated class action brought by former employees alleging antitrust claims

1

against their former employers, who are various animation and visual effects studios with principal places of business in California. Second Amended Complaint ("SAC"), ECF No. 121.[1] Plaintiffs contend that Defendants engaged in a conspiracy to fix and suppress employee compensation and to restrict employee mobility.

### A. Factual Background

#### 1. The Parties

Defendants include the following animation and visual effects studios: Blue Sky Studios, Inc. ("Blue Sky"), a Delaware corporation with its principal place of business in Greenwich, Connecticut; DreamWorks Animation SKG, Inc. ("DreamWorks"), a Delaware corporation with its principal place of business in Glendale, California; Two Pic MC LLC, formerly known as ImageMovers Digital LLC ("ImageMovers Digital"), a Delaware corporation with its principal place of business in Burbank, California; Lucasfilm Ltd., LLC ("Lucasfilm"), a California corporation with its principal place of business in San Francisco, California;[2] Pixar, a California corporation with its principal place of business in Emeryville, California;[3] Sony Pictures Animation, Inc. and Sony Pictures Imageworks, Inc. (collectively, "the Sony Defendants"), California corporations with their principal places of business in Culver City, California; and The Walt Disney Company ("Disney"), a Delaware corporation with its principal place of business in Burbank, California.[4] SAC ¶¶ 22–29.

Plaintiffs are artists and engineers who were previously employed by four of the named Defendants. *Id.* ¶¶ 19–21. Nitsch worked for Sony Picture Imageworks in 2004 and DreamWorks from 2007 to 2011. *Id.* ¶ 19. Cano worked for Walt Disney Feature Animation from 2004 to 2005,

---

[1] Defendant Blue Sky Studios, Inc. has its principal place of business in Greenwich, Connecticut, but Plaintiffs allege that it is owned by Twentieth Century Fox Film Corporation, which has its principal place of business in Los Angeles, California. SAC ¶ 22.
[2] The parties' papers also refer at points to Industrial Light & Magic ("ILM"). Plaintiffs aver that ILM is a division of Lucasfilm.
[3] According to Plaintiffs, Defendant The Walt Disney Company acquired Pixar in 2006 and acquired ILM and Lucasfilm in 2012. SAC ¶¶ 25–26.
[4] Disney also "oversees the operations of" Walt Disney Animation Studios, formerly known as Walt Disney Feature Animation. SAC ¶ 29.

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

1   ImageMovers Digital in 2010, and at various other visual effects and animation studios. *Id.* ¶ 20.

2   Wentworth worked at ImageMovers Digital from 2007 to 2010. *Id.* ¶ 21. Nitsch is a resident of

3   Massachusetts, and Cano and Wentworth are residents of California. *Id.* ¶¶ 19–21.

4   **2.  *In re High-Tech Employee Litigation* and the Department of Justice investigation**

5   There is significant overlap between the instant case and the related action *In re High-Tech*

6   *Employee Litigation*, No. 11-CV-02509-LHK ("*High-Tech*"), as well as the civil complaints filed

7   by the Department of Justice ("DOJ") against Pixar, Lucasfilm, and several Silicon Valley

8   technology companies. As the background of the related *High-Tech* action and the DOJ actions is

9   relevant to Plaintiffs' Motion, the Court briefly summarizes the background of those prior

10  proceedings below.

11  From 2009 to 2010, the Antitrust Division of the DOJ investigated the employment and

12  recruitment practices of various Silicon Valley technology companies, including Adobe Systems,

13  Inc., Apple, Inc., Google, Inc., Intel Corp., and Intuit, Inc. *See In re High-Tech Empl. Litig.*, 856 F.

14  Supp. 2d 1103, 1109 (N.D. Cal. 2012). The DOJ filed its complaint against Adobe, Apple,

15  Google, Intel, Intuit, and Pixar in D.C. District Court on September 24, 2010. *Id.* On December

16  21, 2010, the DOJ filed a separate complaint against Lucasfilm. *Id.* & n.1. The defendants,

17  including Pixar and Lucasfilm, stipulated to proposed final judgments in which the defendants

18  agreed that the DOJ's complaints had stated claims under federal antitrust law and agreed to be

19  "enjoined from attempting to enter into, maintaining or enforcing any agreement with any other

20  person or in any way refrain from . . . soliciting, cold calling, recruiting, or otherwise competing

21  for employees of the other person." *Id.* at 1109–10 (quoting Adobe Proposed Final Judgment at 5).

22  The D.C. District Court entered the stipulated proposed final judgments in March and June 2011.

23  *Id.* at 1110.

24  The *High-Tech* plaintiffs filed five separate state court actions between May and July 2011.

25  Following removal, transfer to San Jose to the undersigned judge, and consolidation, the *High-*

26  *Tech* plaintiffs filed a consolidated amended complaint on September 13, 2011. *High-Tech*, 856 F.

27  Supp. 2d at 1112–13. In their complaint, the *High-Tech* plaintiffs alleged antitrust claims against

28

United States District Court
Northern District of California

3

their employers and alleged that the defendants had conspired "to fix and suppress employee compensation and to restrict employee mobility." *Id.* at 1108. More specifically, the *High-Tech* plaintiffs alleged a conspiracy comprised of "an interconnected web of express bilateral agreements." *Id.* at 1110. One agreement, the "Do Not Cold Call" agreement, involved one company placing the names of the other company's employees on a "Do Not Cold Call" list and instructing its recruiters not to cold call the employees of the other company. *Id.* In addition to the "Do Not Cold Call" agreements, the *High-Tech* plaintiffs also alleged that Pixar and Lucasfilm, defendants in both *High-Tech* and the instant action, entered into express, written agreements (1) to not cold call each other's employees, (2) to notify the other company whenever making an offer to an employee of the other company, and (3) not to engage in "bidding wars." *Id.* at 1111. Second, Defendants allegedly "shared confidential compensation information with each other despite the fact that they considered each other competitors for talent," which would artificially limit compensation offered to Defendants' current and prospective employees. *In re High-Tech Employee Antitrust Litig.*, 2014 WL 1283086, at *3 (N.D. Cal. Mar. 28, 2014).

### 3. Alleged Conspiracy in the Instant Action

In the instant case, Plaintiffs allege that Defendants conspired to suppress compensation in two ways. First, Defendants allegedly entered into a scheme not to actively solicit each other's employees. SAC ¶ 42. Second, Defendants allegedly engaged in "collusive discussions in which they exchanged competitively sensitive compensation information and agreed upon compensation ranges," which would artificially limit compensation offered to Defendants' current and prospective employees. *Id.*

#### a. Anti-Solicitation Scheme

According to Plaintiffs, as in *High-Tech*, "Defendants agreed not to contact their coconspirators' employees to inform them of available positions unless that individual employee had applied for a job opening on his or her own initiative." *Id.* ¶ 43. This solicitation, also known as "cold calling," is "a key competitive tool in a properly functioning labor market, especially for skilled labor." *Id.* ¶ 44. Plaintiffs aver that employees of competitor studios represent "one of the

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

United States District Court
Northern District of California

1    main pools of potential hires," and that employees of competitor studios that are not actively

2    searching for new employment are "more likely to be among the most sought after employees." *Id.*

3    Hiring an employee from a competitor studio "can save costs and avoid risks." *Id.* Absent active

4    solicitation, these employees are also difficult to reach. *Id.* Defendants' anti-solicitation scheme

5    also allegedly included "notifying each other when an employee of one Defendant applied for a

6    position with another Defendant, and agreeing to limit counteroffers in such situations." *Id.* ¶ 45.

7    Moreover, Defendants allegedly "often refrained from hiring other Defendants' employees at all

8    without the permission of the current employer," and would sometimes decline to make offers of

9    employment to an unemployed prospective hire if that individual had an outstanding offer from

10   another Defendant. *Id.* ¶ 46.

11          Plaintiffs allege that while the conspiracy originated with Pixar and Lucasfilm in the mid-

12   1980s, Pixar President Ed Catmull later brought additional studios into the fold. *Id.* ¶ 52.

13   According to Plaintiffs, Blue Sky, DreamWorks, ImageMovers Digital,[5] the Sony Defendants, and

14   Walt Disney Animation Studios all became part of the anti-solicitation conspiracy during the mid-

15   2000s and agreed not to directly recruit each other's employees. *Id.* ¶¶ 53–79.

16          **b.   Compensation Ranges**

17          In addition to the anti-solicitation scheme, Plaintiffs further allege that Defendants

18   "directly communicated and met regularly to discuss and agree upon compensation ranges." *Id.*

19   ¶ 86 (citing March 28, 2007 email from Pixar's Vice President of Human Resources, Lori

20   McAdams). According to Plaintiffs, Defendants met at least once a year in California at meetings

21   organized by the Croner Company, a third party that apparently collects industry-specific salary

22   information.

23          Plaintiffs allege that at these meetings, Defendants "discussed, agreed upon and set wage

24   and salary ranges during meals, drinks and other social gatherings that they held outside of the

---

[5] Plaintiffs dismissed a separate Defendant, ImageMovers LLC, without prejudice pursuant to a
tolling agreement on January 14, 2015. ECF No. 83. The dismissal of ImageMovers LLC did not
affect ImageMovers Digital.

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

United States District Court
Northern District of California

official Croner meetings." *Id.* ¶ 89. Plaintiffs further allege that Defendants regularly emailed each other with specific salary ranges. Plaintiffs contend that Defendants' "collusive compensation setting was not limited to wages and salaries, but extended to other benefits and terms of employment." *Id.* ¶ 97.

Defendants' human resources and recruiting personnel also allegedly regularly communicated via telephone. *Id.* ¶ 113. As Plaintiffs describe it, the Croner survey meetings, side meetings, emails, and telephone calls "provided the means and opportunities for Defendants to collude and to implement and enforce the conspiracy to suppress workers' compensation." *Id.* ¶ 114. According to Plaintiffs, executives such as Pixar's Lori McAdams, "knew that such conversations were inappropriate." *Id.* ¶ 5, 110–11.

Plaintiffs further allege that while press reports in 2009 noted that the DOJ was investigating anti-solicitation agreements among high-tech companies, including Google and Apple, there was no indication that the DOJ was also investigating Pixar, Lucasfilm, or any other animation company. *Id.* ¶ 119. Plaintiffs aver that September 17, 2010 marked the first news story naming Pixar as a company under investigation, but that there was no public disclosure that any other Defendant in the instant action was part of the conspiracy. *Id.* ¶¶ 119, 184. According to Plaintiffs, Lucasfilm was implicated in the Pixar investigation in December 2010, but "until certain filings in the High-Tech docket were unsealed in 2013," there was no public information that the other Defendants in this action had engaged in similar conduct. *Id.* Plaintiffs also cite the absence of news coverage as proof that Plaintiffs had no way of discovering the conspiracy, as even industry journalists were "unable to discover and explore the conspiracy." *Id.* ¶ 186.

### c. Fraudulent Concealment

In their SAC, Plaintiffs allege that Defendants fraudulently concealed the conspiracy and therefore prevented the Plaintiffs from filing their claims on time. Plaintiffs allege that Defendants (1) took affirmative steps to keep their conspiracy a secret; (2) affirmatively misled class members by claiming that compensation and recruiting was determined by factors other than the alleged conspiracy; and (3) took affirmative steps to mislead class members about the conspiracy during

United States District Court
Northern District of California

the *High-Tech* litigation. The details of these alleged steps to fraudulently conceal the anti-competitive scheme are discussed in prior orders in this case, and therefore the Court does not repeat those details here.

### 4.   Claims

Plaintiffs' SAC asserts three claims for relief under the following statutes: (1) Section 1 of the Sherman Act, 15 U.S.C. § 1; (2) California's Cartwright Act, Cal. Bus. & Prof. Code § 16720; and (3) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*. SAC ¶¶ 205–18. Plaintiffs seek treble damages, pre- and post-judgment interest, attorney's fees and expenses, and a permanent injunction. *Id.* ¶ 219.

## B.   Procedural Background

In light of the relationship between the instant case and the *High-Tech* case, the Court summarizes the relevant procedural history of the *High-Tech* case in addition to the procedural history of the instant case.

### 1.   *High-Tech* Procedural Background

The *High-Tech* defendants removed the first state court action on May 23, 2011. No. 11-2509, ECF No. 1. The last state-court action in the *High-Tech* litigation was removed on July 19, 2011. No. 11-2509, ECF No. 41. After reassignment of the cases to the undersigned judge, a First Consolidated Amended Complaint was filed on September 13, 2011. No. 11-2509, ECF No. 65. On April 18, 2012, the Court granted in part and denied in part the *High-Tech* defendants' motions to dismiss. No. 11-2509, ECF No. 119. On April 5, 2013, the Court granted in part and denied in part the *High-Tech* plaintiffs' motion for class certification with leave to amend and denied two motions to exclude expert testimony under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). No. 11-2509, ECF No. 382. The *High-Tech* plaintiffs filed a supplemental motion for class certification on May 10, 2013, which the Court granted on October 24, 2013. No. 11-2509, ECF No. 531. On November 7, 2013, the *High-Tech* defendants filed a Rule 23(f) petition before the Ninth Circuit, requesting permission to appeal this Court's October 24, 2013 class certification order. *In re High-Tech Empl. Antitrust Litig.*, No. 13-80223, ECF No. 1 (9th Cir. Nov. 7, 2013).

7

1    The Ninth Circuit denied the defendants' petition on January 14, 2014. *Id.*, ECF No. 18.

2         In the interim, three of the *High-Tech* defendants—Intuit, Lucasfilm, and Pixar—reached a

3    settlement with the *High-Tech* plaintiffs. On October 30, 2013, the Court granted preliminary

4    approval of that settlement. No. 11-2509, ECF No. 540. The Court granted final approval on May

5    16, 2014. No. 11-2509, ECF No. 915. The Court entered a final judgment with regard to

6    Lucasfilm, Pixar, and Intuit on June 9, 2014 and an amended final judgment on June 20, 2014. No.

7    11-2509, ECF Nos. 936, 947.

8         The remaining *High-Tech* defendants—Adobe, Apple, Google, and Intel—filed individual

9    motions for summary judgment, a joint motion for summary judgment, and a joint motion to strike

10   certain expert testimony on January 9, 2014. No. 11-2509, ECF Nos. 554 (Intel), 556 and 557

11   (joint motions), 560 (Adobe), 561 (Apple), 564 (Google). The Court denied the *High-Tech*

12   defendants' four individual motions for summary judgment on March 28, 2014. No. 11-2509, ECF

13   No. 771. On April 4, 2014, the Court granted in part and denied in part the *High-Tech* defendants'

14   joint motion to strike, and denied the defendants' joint motion for summary judgment. No. 11-

15   2509, ECF No. 788.

16        On May 22, 2014, the *High-Tech* plaintiffs filed a motion for preliminary approval of class

17   action settlement as to the remaining defendants. No. 11-2509, ECF No. 920. On August 8, 2014,

18   the Court denied the *High-Tech* plaintiffs' motion for preliminary approval and concluded that the

19   proposed settlement, which included a settlement fund of $324.5 million, did not fall "within the

20   range of reasonableness." No. 11-2509, ECF No. 974 at 30. On September 4, 2014, the *High-Tech*

21   defendants filed a petition for a writ of mandamus with the Ninth Circuit. *In re Adobe Sys., Inc., et*

22   *al.*, No. 14-72745, ECF No. 1 (9th Cir. Sept. 4, 2014). On September 22, 2014, the Ninth Circuit

23   found that the petition "raises issues that warrant a response," and ordered briefing. *Id.*, ECF No.

24   2. On January 13, 2015, the *High-Tech* defendants filed correspondence with the Ninth Circuit

25   referring to a new proposed settlement agreement. *Id.*, ECF No. 21. On January 30, 2015, the

26   defendants filed an unopposed motion to dismiss the petition, which the Ninth Circuit granted on

27   February 2, 2015. *Id.*, ECF Nos. 23, 24.

28

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

United States District Court
Northern District of California

On January 15, 2015, the *High-Tech* plaintiffs filed a motion for preliminary approval of class action settlement as to the remaining defendants. No. 11-2509, ECF No. 1032. In this second proposed class action settlement, the parties had reached a settlement amount exceeding the previously rejected settlement by approximately $90.5 million. *Id.* at 1. Following a fairness hearing on March 2, 2015, the Court granted preliminary approval to the January 2015 settlement agreement on March 3, 2015. No. 11-2509, ECF Nos. 1051, 1054. The Court held a final approval hearing on July 9, 2015. No. 11-2509, ECF No. 1096. On September 2, 2015, the Court granted final approval of the class action settlement and entered final judgment with regard to Adobe, Apple, Google, and Intuit. No. 11-2509, ECF Nos. 1111, 1113.

### 2.   Procedural Background in the Instant Action

Plaintiff Nitsch filed the first complaint against all Defendants except Blue Sky on September 8, 2014. ECF No. 1. The Court related Nitsch's action to *In re High-Tech Employee Antitrust Litigation*, No. 11-2509, on September 23, 2014. ECF No. 12. Plaintiff Cano filed the second complaint against all Defendants on September 17, 2014, which the Court related to *High-Tech* on October 7, 2014. *See* Case No. 14-4203, ECF Nos. 1, 9. Plaintiff Wentworth filed the third complaint against all Defendants except Blue Sky on October 2, 2014, which the Court related to *High-Tech* on October 28, 2014. *See* Case No. 14-4422, ECF Nos. 1, 26. On November 5, 2014, the Court granted Plaintiffs' motion to consolidate the above-mentioned three cases into a single action, *In re Animation Workers Antitrust Litigation*. *See* Case No. 14-4062, ECF No. 38.

Pursuant to the Court's November 6, 2014 case management order, ECF No. 39, Plaintiffs filed their first consolidated amended complaint on December 2, 2014. ECF No. 63. On January 9, 2015, Defendants filed a joint motion to dismiss. ECF Nos. 75. Plaintiffs filed a timely opposition, ECF No. 97, and Defendants replied, ECF No. 100. On April 3, 2015, the Court granted Defendants' motion to dismiss. *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195 (N.D. Cal. Apr. 3, 2015). The Court found that Plaintiffs' claims were time barred under the statute of limitations, and that Plaintiffs had failed to adequately plead a "continuing violations" theory or a "fraudulent concealment" theory to toll the statute of limitations. *See id.* at 1212,

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

United States District Court
Northern District of California

1217–18. The dismissal was without prejudice, as the Court determined that Plaintiffs might be able to allege sufficient facts to support their continuing violations or fraudulent concealment theories. *Id.*at 1218.

On May 15, 2015, Plaintiffs filed their Second Amended Complaint. ECF No. 121. Six days later, Defendants filed a joint motion to dismiss the SAC. ECF No. 126. Plaintiffs filed a timely opposition, ECF No. 132, and Defendants replied, ECF No. 137. On August 20, 2015, the Court denied Defendants' motion to dismiss the SAC. *In re Animation Workers Antitrust Litig*., 123 F. Supp. 3d 1175, 1207 (N.D. Cal. 2015). In its order denying Defendants' motion to dismiss, the Court found that the SAC was not barred by the statute of limitations because the SAC sufficiently alleged that Defendants had fraudulently concealed the alleged conspiracy. *Id.*

Plaintiffs filed a motion for class certification on February 1, 2016. ECF No. 203. Defendant Blue Sky did not join Defendants' opposition to class certification. Instead, Plaintiffs filed a joint motion for preliminary approval of class action settlement with Blue Sky on March 31, 2016, ECF No. 249, and an amended motion for preliminary approval of class action settlement on May 11, 2016, ECF No. 282. The Blue Sky settlement provided for a payment of $5,950,000 to the class. ECF No. 336, at 1.

Defendants DreamWorks, Disney, Lucasfilm, Pixar, Two Pic (ImageMovers Digital), Sony Pictures Animation, and Sony Pictures Imageworks filed an opposition to the motion for class certification on March 24, 2016. ECF No. 239-1. After Defendants' opposition to class certification was filed, Plaintiffs filed a motion for preliminary approval of class action settlement with the Sony Defendants on May 3, 2016. ECF No. 273 at 4. The Sony settlement provided for a payment of $13,000,000 to the class. ECF No. 336, at 1. As part of the settlement agreement, the Sony Defendants agreed not to cooperate with the remaining Defendants in opposing Plaintiffs' motion for class certification. *See id.*

On May 6, 2016, the Court held a hearing on Plaintiffs' class certification motion. ECF No. 276. On May 25, 2016, the Court granted in part and denied in part the motion. *See Nitsch v.*

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

United States District Court
Northern District of California

1  *DreamWorks Animation SKG Inc.*, 315 F.R.D. 270 (N.D. Cal. 2016). The Court certified the

2  following class (*id.* at 317):

> All animation and visual effects employees employed by defendants
> in the United States who held any of the jobs listed in Ashenfelter
> Reply Report Amended Appendix C during the following time
> periods: Pixar (2004-2010), Lucasfilm Ltd., LLC (2004-2010),
> DreamWorks Animation SKG, Inc. (2004-2010), The Walt Disney
> Company (2004-2010), Sony Pictures Animation, Inc. and Sony
> Pictures Imageworks, Inc. (2004-2010), Blue Sky Studios, Inc.
> (2005-2010) and Two Pic MC LLC f/k/a ImageMovers Digital LLC
> (2007-2010). Excluded from the Class are senior executives,
> members of the board of directors, and persons employed to perform
> office operations or administrative tasks.

10  The Court denied the motion without prejudice as to class members who worked at Pixar

11  and Lucasfilm from 2001-2003, and who worked at DreamWorks in 2003. *See id.* The Court ruled

12  that the SAC did not sufficiently allege acts of fraudulent concealment during those years. *See id.*

13  On June 8, 2016, defendants filed a Rule 23(f) petition with the Ninth Circuit. *See* Petition

14  for Permission to Appeal from the United States District Court for the Northern District of

15  California, *Nitsch v. DreamWorks Animation SKG, Inc.*, No. 16-80077 (9th Cir. June 8, 2016)

16  ("*Nitsch I*" or "Appeal"). On August 29, 2016, the Ninth Circuit granted defendants' motion for

17  leave to file a reply, but denied their Rule 23(f) Petition in a summary order. ECF No. 7 at 1.

18  On July 6, 2016, the Court granted Plaintiffs' motion for preliminary approval of the class

19  action settlements with Sony and Blue Sky. ECF No. 305. On November 11, 2016, the Court

20  granted Plaintiffs' motion for final approval of the class action settlements with Sony and Blue Sky.

21  EF No. 346. On November 11, 2016, the Court also awarded class counsel $4,737,500 in attorney's

22  fees in connection with the Sony and Blue Sky settlements.

23  Plaintiffs and DreamWorks signed a settlement agreement on October 4, 2016 in which

24  DreamWorks agreed to pay $50,000,000 to a common fund to resolve the litigation. On January

25  19, 2017, the Court granted preliminary approval of the Dreamworks Settlement. ECF No. 353.

26  Plaintiffs and Disney signed a settlement agreement on January 30, 2017 in which Disney

27  agreed to pay $100,000,000 to a common fund to resolve the litigation. On March 2, 2017, the

28
Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

United States District Court
Northern District of California

1    Court granted preliminary approval of the Disney Settlement. ECF No. 382. In the preliminary

2    approval order, the Court set a single final approval hearing for the Dreamworks and Disney

3    Settlements for May 18, 2017. The Court held the final approval hearing for the Dreamworks and

4    Disney Settlements on May 18, 2017.

5    **II.    DISCUSSION**

6        The instant motions contain specific requests for attorney's fees, reimbursement of

7    expenses, and service awards. The Court addresses each in turn.

8        **A.   Attorney's Fees**

9            **1.   The Appropriate Method: Lodestar v. Percentage-of-Recovery**

10           Under Ninth Circuit law, "the choice between lodestar and percentage calculation depends

11   on the circumstances, but . . . 'either method may . . . have its place in determining what would be

12   reasonable compensation for creating a common fund.'" *Six Mexican Workers v. Ariz. Citrus*

13   *Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (second ellipsis in original) (quoting *Paul, Johnson,*

14   *Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). "Where," as here, "a settlement

15   produces a common fund for the benefit of the entire class, courts have discretion to employ either

16   the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prods. Liab.*

17   *Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). To guard against an unreasonable result, the Ninth

18   Circuit encourages district courts to "cross-check[] their calculations against a second method." *Id.*

19   at 944; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) (applying a

20   lodestar cross-check to ensure the percentage-of-recovery method yielded a reasonable result).

21           Where the percentage-of-recovery method is employed, it is well established that 25% of a

22   common fund is a presumptively reasonable amount of attorney's fees. *See, e.g.*, *In re Bluetooth*,

23   654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable

24   fee award, providing adequate explanation in the record of any 'special circumstances' justifying a

25   departure."); *Six Mexican Workers*, 904 F.2d at 1311 ("[W]e established 25 percent of the fund as

26   the 'benchmark' award that should be given in common fund cases."). Nevertheless, "[t]he 25%

27   benchmark rate, although a starting point for analysis, may be inappropriate in some cases."

28
Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

*Vizcaino*, 290 F.3d at 1048. For instance, "where awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *In re Bluetooth*, 654 F.3d at 942. Whatever decision a court reaches, that decision "must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

Here, class counsel advocate applying the percentage-of-recovery method. Class counsel request 21 percent of the $150,000,000 total Dreamworks and Disney Settlements, or $31,500,000. Class counsel argue that the Court should apply the percentage-of-the-recovery method of calculating attorney's fees. Class counsel point out that the requested 21% recovery is "well under the 25 percent benchmark" that the Ninth Circuit has established for common fund cases. ECF No. 385, at 4; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."). However, as will be discussed further below, in making such a request, class counsel ignores the $4,737,500 in attorney's fees that the Court has already awarded for the same work.

The Ninth Circuit has made clear that in "megafund" cases, such as this one, courts may "employ the lodestar method instead" of the percentage-of-recovery method if rote application of the 25% benchmark "would yield windfall profits for class counsel in light of the hours spent on the case." *In re Bluetooth*, 654 F.3d at 942. For example, in *In re Washington Public Power Supply System Securities Litigation* ("*WPPSS*"), 19 F.3d 1291, 1297-98 (9th Cir. 1994), the Ninth Circuit held that the district court "acted well within the bounds of its discretion" in applying the lodestar method, rather than the percentage-of-recovery method, to an attorney's fees request arising out of a $687 million settlement fund. Class counsel in *WPPSS* had asked the district court for 13.6% of the fund, well below the "circuit's 25 percent benchmark figure," but the district court found that request to be "arbitrary" because class counsel "could just as easily have requested 3.6 percent or 36.1 percent." *Id.* (internal quotation marks omitted). In upholding the district court's decision, the Ninth Circuit explained: "With a fund this large, picking a percentage without reference to all the circumstances of the case, including the size of the fund, would be like

1    picking a number out of the air." *Id.* "Because a court must consider the fund's size in light of the

2    circumstances of the particular case," the Ninth Circuit continued, "we agree with the district court

3    that the 25 percent 'benchmark' is of little assistance in a case such as this." *Id.*

4          Just as there was "nothing inherently reasonable about an award of 13.6 percent of a [$687

5    million] fund" in *WPPSS*, *id.* at 1298, the Court finds nothing inherently reasonable in Plaintiffs'

6    counsel's total request here for 21% of the $150,000,000 settlement (or 21.4% of $168,950,000 if

7    the settlements with Sony and Blue Sky are included). *See also Gutierrez v. Wells Fargo Bank,*

8    *N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *4 (N.D. Cal. May 21, 2015) (rejecting class

9    counsel's request to apply the percentage-of-recovery method to a $203 million restitution award

10    and opting for the lodestar method instead because "blindly adopting the 25-percent benchmark

11    . . . would result in a windfall to class counsel").

12          Having overseen the litigation in the instant case and the related case of *In re High-Tech*

13    *Employee Antitrust Litigation*, No. 11-2509, the Court finds that justice would be best served by

14    applying the lodestar method—i.e., tying the fee awards for class counsel to the actual hours they

15    reasonably expended on this litigation and then selecting a multiplier. The Court concludes that

16    the lodestar method is superior to the percentage-of-the-recovery method for two reasons.

17          First, class counsel's proposed percentage would result in a multiplier that is unreasonably

18    high. The multiplier for class counsel's proposed percentage is 3.40 for the Disney and

19    Dreamworks settlements and 3.91 if the prior attorney's fees awards for the Sony and Blue Sky

20    settlements are included. Although class counsel argues extensively about the reasonableness of

21    "[a]n overall multiplier of 3.40," ECF No. 385, at 6, ignoring previous awards of attorney's fees

22    for the same work renders class counsel's multiplier inaccurate. In calculating its lodestar in the

23    instant motion for attorney's fees, class counsel includes billed hours for which class counsel

24    already received compensation in connection with the Sony and Blue Sky settlements. Thus, if the

25    Court did not take into account the fee awards for the Sony and Blue Sky settlements, class

26    counsel would receive a double recovery for these hours. Thus, the Court determines that the 3.91

27    multiplier is the relevant multiplier for class counsel's requested award.

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

United States District Court
Northern District of California

1      Class counsel argues that courts often approve multipliers as high or higher than 3.91.

2  However, such awards are far from the norm. In *Vizcaino*, 290 F.3d at 1051 n.6, the Ninth Circuit

3  surveyed class actions settlements nationwide and found that 54 percent of lodestar multipliers fell

4  within the 1.5 to 3.0 range, and that 83 percent of multipliers fell within the 1.0 to 4.0 range. Thus,

5  the requested 3.91 multiplier would be higher than the significant majority of cases. Additionally,

6  although class counsel have cited several cases awarding multipliers higher than 3.91, most of

7  these cases involved settlement funds that were much smaller than the $168,950,000 settlement

8  fund in the instant case. *See, e.g.*, *Buccellato v. AT & T Operations, Inc.*, 2011 WL 3348055, at *2

9  (N.D. Cal. June 30, 2011) (approving multiplier of 4.3 in case involving $12,500,000 settlement

10  fund); *Rabin v. Concord Assets Grp., Inc.*, 1991 WL 275757, at *1 (S.D.N.Y. Dec. 19, 1991)

11  ("The requested attorneys' fees of $2,544,122.78 represents a multiplier of 4.4 . . . . Plaintiffs'

12  counsel asserts that 'when one considers the potential additional time plaintiffs' counsel will be

13  required to work in this matter, the multiplier is reduced to a range of 3.7 to 3.2.'"); *Maley v. Del*

14  *Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 360 (S.D.N.Y. 2002) (approving multiplier of 4.65 in

15  case involving $28,000,000 settlement fund).

16      In the instant case, in the Court's judgment, a multiplier of 3.91 would result in "windfall

17  profits for class counsel in light of the hours spent on the case." *In re Bluetooth*, 654 F.3d at 942;

18  *see also Allen v. Bedolla*, 787 F.3d 1218, 1224 n.4 (9th Cir. 2015) (cautioning that district courts

19  "should not calculate fees using a mechanical or formulaic approach that results in an

20  unreasonable reward" (internal quotation marks omitted)). The potential for a significant windfall

21  counsels against rigid application of the percentage-of-the-recovery method for calculating an

22  attorney's fees award.

23      The second reason that the lodestar method is superior to the percentage-of-the-recovery

24  method in the instant case is that using the lodestar method would allow the Court to examine

25  class counsel's "presumptively reasonable" lodestar figures, and if suitable, adjust them "by an

26  appropriate . . . multiplier reflecting a host of reasonableness factors, including the quality of

27  representation, the benefit obtained for the class, the complexity and novelty of the issues

28

15

presented, and the risk of nonpayment." *In re Bluetooth*, 654 F.3d at 941-42 (citations and internal quotation marks omitted). This case has a very large settlement fund, and the size of the settlement fund can be attributed in large part to the success of *High-Tech*. *High-Tech* provided much of the evidence, legal theories, arguments, and prior rulings necessary to litigate this case. Moreover, by litigating two motions to dismiss, multiple *Daubert* motions, two class certification motions, and five summary judgment motions, the plaintiffs in *High-Tech* eliminated much of the risk in litigating the instant case and established the benchmarks for the sizes of the settlement funds. Therefore, considering the posture of this case and the large settlement fund, the Court finds that the lodestar method is superior to accepting somewhat arbitrary percentages. *See WPPSS*, 19 F.3d at 1297–98.

### 2.  Lodestar Method

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Although "the lodestar figure is 'presumptively reasonable,' the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors." *Id.* at 941-42 (citations and internal quotation marks omitted).

### a.  Billing Rates

Having reviewed the billing rates for the attorneys, paralegals, and litigation support staff at each of the firms representing Plaintiffs in this case, the Court finds that these rates are reasonable in light of prevailing market rates in this district and that counsel for Plaintiffs have submitted adequate documentation justifying those rates.

Class counsel have filed several declarations describing the billing rates and hours worked on the instant case. *See* Declaration of Jeff D. Friedman in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards ("Friedman Decl."), ECF No. 385-2; Declaration of Daniel A. Small in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

United States District Court
Northern District of California

Awards ("Small Decl."), ECF No. 385-7; Declaration of Steven G. Sklaver in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards ("Sklaver Decl."), ECF No. 385-5; *see also* Supplemental Brief Regarding Motion for Attorney's Fees, ECF No. 345. These declarations establish that the hourly rates are fair, reasonable, and market-based, particularly for the "relevant community" in which counsel work. *See* Friedman Decl. ¶ 12; Small Decl., ¶ 29; Sklaver Decl., ¶ 11. Class counsel are highly-respected members of the bar with extensive experience in prosecuting high-stakes complex litigation, including consumer class actions. *See* Friedman Decl., ¶¶ 6-11; Small Decl., ¶¶ 2-13; Sklaver Decl., ¶¶ 3-10. With three exceptions, counsel's hourly rates in this action range from $275 to $750, with rates varying based on experience. *See* Friedman Decl., ¶ 13; Small Decl., ¶ 30; Sklaver Decl., ¶ 12. The three most senior attorneys on the case, who serve as the lead attorney for each respective law firm, charge between $870 and $1,200 per hour. *See* Friedman Decl., ¶ 13; Small Decl., ¶ 30; Sklaver Decl., ¶ 12. Mr. Seltzer's $1,200 hourly rate is the same rate that he charges clients, including corporations that are billed hourly, which provides a market-based cross-check. *See* Sklaver Decl., ¶ 11. Hourly rates for paralegals are $290 or lower. *See* Friedman Decl., ¶ 13; Small Decl., ¶ 30; Sklaver Decl., ¶ 12. Overall, the rates charged by counsel here are comparable to the fees approved by the Court, over a year ago, in the *High-Tech* case and more recently in conjunction with the Sony and Blue Sky settlements.[6] *See* ECF No. 347 (approving almost identical rates in connection with the Sony and Blue Sky settlements). Thus, the Court finds that the reported hourly rates are fair and reasonable.

### a. Hours

Having reviewed the billing records for the attorneys, paralegals, and litigation support staff at each of the firms representing Plaintiffs in this case, the Court finds that these records

---

[6] In *High-Tech*, this Court found class counsel's rates "reasonable in light of prevailing market rates in this district," including partner rates that ranged from $490 to $975 per hour; non-partner rates that ranged from $310 to $800 per hour; and paralegals, law clerks, and support staff rates that ranged from $190 to $430, "with most in the $300 range." *High-Tech Fees Order*, 2015 WL 5158730, at *9; *In re Animators*, Order Granting Request for Attorney's Fees, Dkt. # 347.

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

adequately reflect the amount of time reasonably spent on this litigation.

As set forth in the supporting declarations, class counsel have collectively spent more than 18,448 hours of attorney and litigation support time on this action. *See* Friedman Decl. ¶ 13 (4,704.30 hours); Small Decl. ¶ 30 (7,446.75 hours); Sklaver Decl., ¶ 12 (6,297.90 hours). The number of hours that class counsel has devoted to pursuing this litigation is appropriate and reasonable, given class counsel's work in the following areas: (1) pre-complaint investigation; (2) production and review of documents in discovery; (3) filing an amended complaint, an opposition to a motion to dismiss, a second amended complaint, and a second opposition to a motion to dismiss, as well as an opposition to a motion to compel arbitration; (4) briefing at the class certification stage; (5) expert reports; (6) taking the depositions of twenty-five witnesses and defending an additional five depositions; and (7) opposing defendants' Rule 23(f) petition. Class counsel's reported hours include hours billed through February 2017. ECF No. 385, at 5 n.6. Thus, these hours do not include hours billed in preparing the motion for final approval, responding to objections, arguing at the final approval hearing, working with the settlement administrator to distribute the settlement fund, and litigating any appeals.

Class counsel reports a lodestar of $2,165,448.50 for Hagens Berman, $2,859,177 for Susman Godfrey, and $4,244,453.75 for Cohen Milstein. Thus, in total, class counsel reports a lodestar of $9,269,079.25.

### a.   Multipliers

As indicated above, the Court may "adjust" the lodestar figures "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *In re Bluetooth*, 654 F.3d at 941-42 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). "Foremost among these considerations, however, is the benefit obtained for the class." *Id.* at 942. For the reasons stated below, the Court concludes that a positive multiplier of 2.0 is appropriate for class counsel.

The Court recognizes that class counsel has achieved significant benefits for the class and

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

1    that class counsel assumed a risk of nonpayment while litigating this case for over two years. In

2    the end, class counsel achieved a significant result for the class. The Disney and Dreamworks

3    settlements total $150,000,000, which represents 33.5% of the damages attributable to Disney and

4    39% of the damages attributable to Dreamworks. Together, all the settlements in the instant case

5    total $168,950,000, which represents 30.5% of Plaintiffs' valuation.

6            Considering all the facts and circumstances of this case, the Court finds that a multiplier of

7    2.0 is appropriate for class counsel. As stated above, the Ninth Circuit in *Vizcaino* conducted a

8    survey of attorney's fees awards in megafund cases. *See* 290 F.3d at 1052-54. This survey

9    involved common fund cases ranging from $50–200 million between 1996 and 2001. *See id.* In

10   83% of the settlements (20 of 24), the multiplier ranged from 1.0–4.0, and in 54% of the

11   settlements (13 of 24), the multiplier was in the 1.5–3.0 range. *Id.* at 1051 n.6. A multiplier of 2.0

12   would therefore be in line with the vast majority of megafund settlements such as this one and

13   would adequately reward class counsel for the work performed in this litigation. A multiplier of

14   2.0 is also reasonable in light of the 2.2 multiplier that the Court granted in *High-Tech*, a case that

15   involved significantly more risk than the instant case. As a result, the Court multiplies class

16   counsel's lodestar of $9,269,079.25, which includes all work in the instant case related to claims

17   against all Defendants, by 2.0 and finds that a total attorney's fee award of $18,538,158.50 is

18   appropriate. Because class counsel has already received $4,737,500 in attorney's fees as part of

19   the Sony and Blue Sky settlements, the Court grants an attorney's fee award of $13,800,658.50 in

20   the instant Dreamworks and Disney settlements.

21           **1.   Percentage-of-Recovery Cross-Check**

22           The reasonableness of the Court's fee awards under the lodestar method is supported by

23   cross-checking the award with the percentage-of-recovery method. *See In re Bluetooth*, 654 F.3d

24   at 944 (encouraging courts to "cross-check[] their calculations against a second method"). The

25   $13,800,658.50 attorney's fee award is about 9.2% of the $150 million Disney and Dreamworks

26

27

28

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

United States District Court
Northern District of California

United States District Court
Northern District of California

settlements.[7] Adding the $4,737,500 million in attorney's fees the Court already awarded for the settlements with Sony and Blue Sky, the percentage increases to roughly 11%.[8] Although the benchmark in the Ninth Circuit for common fund cases is 25%, a percentage recovery of 9.2% or 11% is not unreasonable for a settlement of this size.

The most accurate comparison for the attorney's fees in the instant case is the attorney's fees award that the Court granted in *High-Tech*, which is related to and gave rise to the instant case. *See* ECF No. 385 at 2 (In the instant case, "[c]lass counsel were not even aware of the possibility of bringing this case until one of its lawyers read an article in July 2014 discussing some of the documents unsealed in *High-Tech*."). In *High-Tech*, after evaluating several empirical studies, the Court granted a $40,000,000 attorney's fee award based on a lodestar multiplier of 2.2. The Court performed a percentage-of-the-recovery crosscheck and determined that a total percentage of 10.5% was reasonable. Thus, the total percentage of the recovery in the instant case, 11%, is higher than the percentage of the recovery in *High-Tech*, despite the greater risk, greater overall recovery, and longer litigation in *High-Tech*.

A comparison of the work done in this case and the work done in *High-Tech* confirms that class counsel should not receive a significantly higher percentage-of-the-recovery fee than the percentage awarded in *High Tech*. The instant case lasted less than three years, from the filing of the complaint on September 8, 2014, to the date of this order, June 5, 2017. As discussed above, in the instant case class counsel (1) conducted pre-complaint investigation; (2) produced and reviewed documents in discovery; (3) filed an amended complaint, an opposition to a motion to dismiss, a second amended complaint, and a second opposition to a motion to dismiss, as well as an opposition to a motion to compel arbitration; (4) filed briefing at the class certification stage; (5) served expert reports; (6) took the depositions of twenty-five witnesses and defended an additional five depositions; and (7) opposed defendants' Rule 23(f) petition.

---

[7] $(13,800,658.50 \div 150,000,000) \times 100 = 9.2\%$
[8] $((13,800,658.50 + 4,737,500) \div 168,950,000) \times 100 = 10.97\%$

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*High-Tech*, in contrast, lasted over four years, from the filing of the initial complaint on May 4, 2011 to the date the case closed on September 2, 2015. In *High-Tech*, class counsel had taken the following actions up to the time of settlement: (1) identified the alleged conspiracy to fix and suppress employee compensation in the tech industry; (2) prepared and filed multiple complaints against Defendants; (3) survived two motions to dismiss; (4) undertook considerable discovery, including taking 93 depositions and defending 14 others, serving 75 document requests, reviewing the resulting 325,000 documents (over 3.2 million pages), serving 28 subpoenas on third parties, reviewing 8,809 pages of documents from those third parties, producing over 31,000 pages of documents in response to Defendants' document requests, and responding to and reviewing 34 subpoenas served by Defendants on third parties; (6) retained four experts to assist in analyzing over 15 gigabytes of employment-related compensation and recruiting data; (7) worked with the experts to produce multiple expert reports; (8) litigated multiple *Daubert* motions; (9) filed a consolidated class action complaint; (10) litigated two rounds of class certification; (11) opposed a Rule 23(f) appeal to the Ninth Circuit; (12) survived five summary judgment motions; (13) prepared for trial; (14) negotiated three settlements; and (15) opposed mandamus in the Ninth Circuit.

Thus, a comparison of work between the instant case and *High Tech* makes clear that class counsel should not receive a significantly higher percentage of the recovery than class counsel received in *High Tech.* Indeed, if the Court granted the overall 21.4% percentage of the recovery that class counsel requests in the instant case, the total attorney's fee award would be $36,237,500. This is over 90% of the $40,000,000 award granted in *High-Tech*, despite the fact that the lodestar in *High-Tech* was almost double the reported lodestar in the instant case. *See In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *5 (N.D. Cal. Sept. 2, 2015) ("Class Counsel's final revised lodestar, which is the sum of the lodestars for each of the four firms, is $18,201,787.50."). This would also be unreasonable in light of the fact that the settlements in *High-Tech* totaled $415,000,000, which far exceeds the $168,950,000 total settlement amount in the instant case.

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

An 11% percentage of the recovery is also consistent with the principle that "fees as a percentage of the recovery tend to decrease as the size of the recovery increases," which is discussed in the empirical study cited in class counsel's motion for attorney's fees, Theodore Eisenberg, *Geoffrey P. Miller & Roy Germano, Attorneys' Fees in Class Actions: 2009-2013*, NYU Law and Economics Research Paper No. 17-02 (December 1, 2016) ("EMG Study"). As the EMG Study points out, this effect is "due to the economies of scale that can sometimes be achieved in very large cases." *Id.* This "economies of scale" effect is especially relevant in the instant case, in which not only has class counsel achieved economies of scale from their work in this case, but class counsel was also able to rely on documents, legal theories, rulings, and settlements in *High Tech* to successfully litigate and resolve this case. Thus, although the recovery in the instant case is a significant benefit for the class, a substantial portion of the size of the recovery in the instant case can be attributed to the success of the plaintiffs in *High-Tech*. In this context, it would be unfair and unreasonable to grant class counsel in the instant case a greater percentage of the recovery than the percentage awarded to class counsel in *High Tech*.

In short, in the instant case, even more than in *High Tech*, rote application of the 25% benchmark "would yield windfall profits for class counsel in light of the hours spent on the case." *In re Bluetooth*, 654 F.3d at 942. Therefore, the Court finds that the percentage-of-the-recovery crosscheck confirms that a total award from all settlements of $18,538,158.50, and a $13,800,658.50 from the Dreamworks and Disney settlements, are reasonable.

This reduced attorney's fees award will provide a significant benefit to the class because the attorney's fees are deducted from the fund for class members. Specifically, as discussed below, the Court's decision to reduce the attorney's fees award to class counsel increases the average class member recovery from all the settlements from roughly $11,984 per person to roughly $13,612 per person. *See infra* Part III.C.

### 2. Objections

The Court received three objections to class counsel's requested attorney's fees. The first two objections were from Charles Williams and Alice Goldstone, who filed a joint objection form.

1   ECF No. 386. Mr. Williams and Ms. Goldstone are not members of the class and thus lack

2   standing to object. Additionally, on June 2, 2017, Mr. Williams and Ms. Goldstone withdrew their

3   objections. Nevertheless, the Court considers the objections for the sake of completeness. Mr.

4   Williams and Ms. Goldstone objected to the attorney's fee award on two grounds. First, Mr.

5   Williams and Mr. Goldstone objected that "none of the specifics for the requested fee are not [sic]

6   included in the notice" and that "the costs of notice and administration of the class fund were not

7   disclosed." *Id.* at 8. However, the notice sent to class members disclosed that class counsel would

8   seek a fee of up to 25%, and there is no requirement that details regarding the plaintiffs' fee

9   request be separately disseminated to the Class. Indeed, Plaintiff's requested fees of 21% of the

10  settlement fund are below the 25% disclosed in the notice, and the Court's final award of

11  $13,800,658.50 in attorney's fees in connection with the DreamWorks and Disney settlements is

12  substantially below the 25% disclosed in the notice. In addition, the notice disclosed that "court-

13  approved costs, and attorney's fees and expenses" would be deducted from the settlement. ECF

14  No. 359-2, at 9. Furthermore, the instant motion for attorney's fees in connection with the

15  DreamWorks and Disney settlements does not seek any additional funds for the settlement

16  administrator because the Court granted the settlement administrator $95,495.09 in costs in

17  connection with the Sony and Blue Sky settlements for all of the settlement administrator's actual

18  and projected costs. ECF No. 347, at 14. There were no objections to the Sony and Blue Sky

19  settlements.

20      Second, Mr. Williams and Ms. Goldstone objected to the size of the multiplier that class

21  counsel requests. ECF No. 386, at 9 ("3.91 is a very large multiplier"). For the reasons discussed

22  above, the Court agrees. As discussed above, the Court exercises its discretion to award attorney's

23  fees in the instant case based on the lodestar method and grants class counsel a lodestar multiplier

24  of 2.0. The Court finds that a multiplier of 2.0 is fair and reasonable in light of all the facts and

25  circumstances of the case and is in line with multipliers granted in similar cases. *See, e.g.*, *High-*

26  *Tech*, 2015 WL 5158730, at *10 (granting a multiplier of 2.2).

27

28

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

United States District Court
Northern District of California

The third objection to the attorney's fee award is from Christian Haley. ECF No. 387. Mr. Haley objects to the requested attorney's fees on the grounds that "it is established that in mega fund' settlements, such as the case at bar, the preferable method [for calculating attorney's fees] is the lodestar method." *Id.* at 3–4. Mr. Haley also states that class counsel's requested percentage "of about 20%" would "lead to a windfall" for class counsel in the instant case. *Id.* at 4.

Although the Court does not decide whether the lodestar method is in general preferable in mega-fund settlements, the Court agrees with Mr. Haley that under the facts and circumstances of the instant case, the percentage-of-the-recovery method "is arbitrary and may provide a windfall to counsel." *Id.* at 4. Thus, as discussed above, the Court applies the lodestar method to calculate class counsel's attorney's fees.

In short, none of the above objections requires the Court to modify its attorney's fees awards to class counsel.

### 3.  Conclusion: Attorney's Fees Award

In sum, the Court awards $13,800,658.50 in attorney's fees to class counsel for the Dreamworks and Disney settlements. Taking into account the $4,737,500 million in attorney's fees already awarded to class counsel in the settlements with Sony and Blue Sky, class counsel will receive a total of $18,538,158.50 out of the $168,950,000 combined settlements.

### B.  Expenses

In common fund cases, the Ninth Circuit has stated that the reasonable expenses of acquiring the fund can be reimbursed to counsel who has incurred the expense. *See Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *accord Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002). All expenses that are typically billed by attorneys to paying clients in the marketplace are compensable. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

The Court previously awarded $1,561,700.47 in expenses in connection with the Sony and Blue Sky settlements. ECF No. 347, at 13–14. In the instant motion, Plaintiffs seek a total award of $490,040.13 in expenses that were not reimbursed in the Sony and Blue Sky settlement and that were necessarily incurred in connection with the prosecution of this action. With their motion,

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

plaintiffs provide an accounting of the expenses incurred by Plaintiffs' counsel. *See* Friedman Decl. ¶ 15; Small Decl. ¶ 33; Sklaver Decl. ¶ 14. Several categories account for the bulk of these expenses: fees paid to experts, filing fees, travel expenses, costs of court and deposition transcripts, and computer research expenses. All of these costs were necessarily and reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for the various categories of expenses incurred. Further, Plaintiffs' counsel advanced these necessary expenses without assurance that they would be recouped. For these reasons, Plaintiffs' request for fees is reasonable. The Court therefore GRANTS an award of $490,040.13 in expenses.

### C. Service Awards

In evaluating whether class representatives are entitled to reasonable service awards, district courts "must evaluate their awards individually, using 'relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977.

In the instant case, Plaintiffs request $80,000 for each named Plaintiff for service awards in connection with the Disney settlement and $10,000 for each named Plaintiff for service awards in connection with the Dreamworks settlement. Combined with service awards from the Sony and Blue Sky settlements, this will result in a total of $100,000 in service awards for each of the three named Plaintiffs.

"Service awards for class representatives are routinely provided to encourage individuals to undertake the responsibilities and risks of representing the class and recognize the time and effort spent in the case." ECF No. 347 at 14. In the Ninth Circuit, service awards "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). "Courts have discretion to approve service awards based on, *inter alia*, the amount of time and effort spent, the duration of the litigation, and the personal benefit (or lack thereof) as a result of

1  the litigation." ECF No. 347 at 14.

2         Here, the three named plaintiffs, Robert Nitsch, David Wentworth, and Georgia Cano have

3  spent a significant amount of time assisting the litigation of this case.[9] Each plaintiff responded to

4  written discovery and produced documents relating to their claims; they were each deposed by

5  defense counsel for a full day regarding their claims; they reviewed the SAC and other substantive

6  pleadings; and they reviewed and approved the settlements.[10] Perhaps most importantly, despite

7  the tight-knit and fluid nature of the animation and visual effects industry, each of the named

8  plaintiffs was willing to put his or her name on this employment lawsuit for the benefit of all

9  absent class members despite a very real fear of workplace retaliation, *Cook v. Niedert*, 142 F.3d

10 1004, 1016 (7th Cir. 1998), or being viewed as "troublemakers" within the industry, *In re High-*

11 *Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015); *see also* Nitsch

12 Decl. ¶ 12; Wentworth Decl. ¶ 10; Cano Decl. ¶ 12. In fact, defendants subpoenaed their

13 employment records from current and former employers. Additionally, the named plaintiffs each

14 state in their declarations that the animation industry is particularly sensitive to the reputation of

15 employees because it is a small industry and employees tend to switch projects and employers

16 often. S *ee* Nitsch Decl. ¶ 12; Wentworth Decl. ¶ 12; Cano Decl. ¶ 12. Thus, the risk of workplace

17 retaliation in the instant case is particularly acute.

18         Furthermore, the service awards of $90,000 ($100,000 total for the litigation) are in line

19 with awards in other megafund cases. *See, e.g.*, *Marchbanks Truck Serv. v. Comdata Network*,

20

21 [9] Mr. Williams and Ms. Goldstone also object to the incentive awards for named Plaintiffs on the
    ground that the proposed incentive awards are disproportionate to the average recovery for class

22 members and because"[t]he proposed incentive award has not been supported by any substantial
    evidence that the class representatives have exerted any labor . . . , suffered any risk of retaliation,

23 or otherwise put the sweat of their collective brow to work on behalf of the class." ECF No. 386,
    at 10. However, as discussed above, Mr. Williams and Ms. Goldstone are not members of the class

24 in this case, have no standing to object, and have withdrawn their objections. Additionally, as
    described below, the named Plaintiffs performed significant work on behalf of the class and the

25 requested incentive awards are not disproportionate to the average recovery for class members.
    [10] *See* Declaration of Robert Nitsch in Support of Plaintiffs' Motion for Attorneys' Fees,

26 Expenses, and Service Awards ("Nitsch Decl."), ¶¶ 6-11; Declaration of David Wentworth in
    Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards ("Wentworth

27 Decl."), ¶¶ 6-9; Declaration of Georgia Cano in Support of Plaintiffs' Motion for Attorneys' Fees,
    Expenses, and Service Awards ("Cano Decl."), ¶¶ 6-11.

28
                                                    26

United States District Court
Northern District of California

1    *Inc.*, Case No. 07-CV-1078, Dkt. 713 at 2, 8 (E.D. Pa. July 14, 2014) (approving $130 million

2    class action settlement, including service award of $150,000 to one class representative and

3    service awards of $75,000 to two other class representatives); *In re Titanium Dioxide*, 2013 WL

4    6577029, at *1 (awarding $125,000 to lead class representative out of $163.5 million settlement);

5    *Velez v. Novartis Pharm. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *4, *8, *28

6    (S.D.N.Y. Nov. 30, 2010) (awarding $125,000 to named plaintiffs from $175 million settlement).

7    The service awards of $90,000 are also consistent with service awards granted in *High-Tech. See*

8    *High-Tech Fees Order*, 2015 WL 5158730, at *17 (granting each of four named plaintiffs a total

9    of $100,000 in service awards, and awarding a fifth plaintiff, who successfully objected to the

10   final settlement, a total of $140,000).

11        Finally, the ratio between the service awards and the average class member recovery is not

12   unreasonable. The Ninth Circuit has cautioned that where there is a "very large differential in the

13   amount of damage awards between the named and unnamed class members," that differential must

14   be justified by the record. *Staton*, 327 F.3d at 978. Taking into account the Court's reductions of

15   the amounts requested for attorney's fees, the average class member recovery from all the

16   settlements in the instant case should increase from roughly $11,984 per person to roughly

17   $13,612 per person.[11] The resulting ratio between service awards and class member recovery is

18   about 7.3. This ratio is justified by the record detailed above, including the numerous hours each

19   class representative spent on this high-profile litigation and their reasonable fears of workplace

20   retaliation. *Compare Staton*, 327 F.3d at 948, 975-78 (rejecting settlement where 29 class

21   representatives could receive up to $50,000 compared to $1,000 for unnamed class members);

22   *Wallace v. Countrywide Home Loans, Inc.*, No. 8:08-1463-JLS MLGX, 2014 WL 5819870, at *4

23   (C.D. Cal. Apr. 14, 2014) (rejecting settlement where service awards were "33 times greater than

24

25   [11] The Court calculated this figure by comparing the net settlement fund (from all settlements)
     with the requested fees, costs, and incentive awards divided by the approximate number of class

26   members (($168,950,000 − $36,237,500 − 2,051,740.60 − 95,495.09 − 300,000) ÷ 10,870 =
     $11,983.9) with the net settlement fund with the final fees, costs, and incentive awards divided by

27   the approximate number of class members ((($168,950,000 − $18,538,158.50 − 2,051,740.60 −
     95,495.09 − 300,000) ÷ 10,870 = $13,612.20).

28
     Case No. 14-CV-04062-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

*the maximum* possible recovery of other individual class members" (emphasis added)); *Kaufman v. Am. Exp. Travel Related Servs. Co.*, 264 F.R.D. 438, 448 (N.D. Ill. 2009) (disapproving $2,500 service awards because they were "125 times greater than the $20 maximum that any similar Class member could recover"), *with In re Capital One Tel. Consumer Prot. Act Litig.*, 2015 WL 605203, at *19 (N.D. Ill. Feb. 12, 2015) (approving $5,000 service awards where class members who made timely claims were entitled to "at least $39.66"); *Lemus v. H&R Block Enters. LLC*, No. C 09-3179 SI, 2012 WL 3638550, at *5-6 (N.D. Cal. Aug. 22, 2012) (approving $15,000 service awards where the average class recovery was about $1,200).

This ratio is also significantly lower than the ratios approved in *High Tech, High-Tech Fees Order*, 2015 WL 5158730, at *17. In *High-Tech*, the Court approved an award of $140,000 for a successfully objecting plaintiff and $100,000 each for four other named plaintiffs. *Id.* In *High-Tech*, the average recovery per class member was "roughly $5,770 per person," and thus the ratio between recovery and service awards was 21 for the plaintiff receiving $140,000 and 14 for the plaintiffs receiving $100,000.  These ratios are significantly higher than the 7.3 ratio in the instant case.

Even though the litigation in the instant case was shorter than the litigation in *High-Tech*, the service awards are the same as the service awards in *High-Tech* because the individual recovery is significantly higher, because the plaintiffs in the instant case are often employed for a single project and thus need to switch jobs often, and because the plaintiffs in the instant case are employed in a much smaller industry with a smaller number of employers (most of whom are Defendants in this case). *Compare Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 317 (N.D. Cal. 2016) (certifying class of "animation and visual effects employees") with *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1177 (N.D. Cal. 2013) (certifying class of "[a]ll natural persons who work in the technical, creative, and/or research and development fields").

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

Based on the foregoing, the Court accordingly concludes that the request for a $90,000 service award for each named plaintiff is reasonable. The Court therefore GRANTS the requested $90,000 service award for each of the three named Plaintiffs.

## III.  CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part the motions for attorney's fees, reimbursement of expenses, and service awards. The Court awards as follows:

- $13,800,658.50 in attorney's fees to class counsel in connection with the Dreamworks and Disney settlements, for a total attorney's fee award of $18,538,158.50 in the entire case;
- $490,040.13 in unreimbursed expenses to class counsel in connection with the Dreamworks and Disney settlements;
- $90,000 service awards each to Plaintiff Nitsch, Plaintiff Wentworth, and Plaintiff Cano in connection with the Dreamworks and Disney settlements.

**IT IS SO ORDERED.**

Dated: June 5, 2017

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

United States District Court
Northern District of California